The third case this morning is 24-3043 Watkins v. Genesh, counsel for appellant. You can pause for a second. And let me be clear, you do whatever you want, it's not going to impair our ability to hear your argument. So whatever you're comfortable doing, Mr. McKee. I think I'll be okay. Okay, that's fine. If something happens, I'll tell you. Okay, that's fine. Thank you. Go ahead. The police court. This case arises out of some extraordinary circumstances, particularly during the pandemic, when there was a lot of confusion. There was a 1981 claim that was filed, went on for 14, 16 months perhaps. At the conclusion of that, Jeff Robinson entered an order, and in that order specifically preserved any Title VII claims that plaintiff had and said that she could file them after the KHRC, EEOC were done with their proceedings. And I'm glad that you're going to the heart of the matter, as I see it, Mr. McKee. What authority do you have to indicate that Judge Robinson or any district court judge was situated to preserve your claims? I mean, it was a footnote, and it was what, two sentences, three sentences at most, did not talk about claim preclusion at all. What authority would there be to indicate that Judge Robinson could preserve in the face of Wilkes your Title VII claim? I don't have a specific, I don't have a specific case on that. But in the face of Wilkes, I think it's an issue. Well, Wilkes looked at alternatives of what could have or should have been done. Well, advising the court that there was a Title VII case pending, the judge decided to enter an order, and in that, I believe, reserved her Title VII claims. Are you talking about in Wilkes, or are you talking about in this case? Sorry, in this case. Well, one, Judge Robinson, in footnote 23, didn't cite Wilkes. And among the options that were provided in Wilkes was not, was not, notifying the district court that we have a pending Title VII claim. It was taking proactive efforts to put that Title VII claim in your 1981 lawsuit, which was not done. Right? Right. Okay. Well, if, if there is no authority as to support the notion that Judge Robinson could preserve this claim, as I understand, there were two things that I saw in your supplemental briefing. One, the concern about the timing, which you started out with the COVID-19, you know, was a mess, admittedly. Okay, that. Two, was Judge Robinson preserving your claim? If there's no authority for Judge Robinson preserving the claim, and, and I have a hard time finding authority to support the notion that COVID-19 makes a difference in this context, then, then, then what basis is it for us to go forward? Because the reality is, why would claim preclusion then not kick in? Because the two options that Wilkes gave, you did not avail yourself of. And I'm not being critical. I'm just saying it didn't happen. So that being the case, what basis is there to go forward? Well, you know, again, I believe that Judge Robinson's order preserved it, whether she was right or wrong. It seems to me that that's something that would have needed to be taken up in the 1981 case, not attacking it now in a subsequent case. Well, that's what claim preclusion is. I mean, it's always the subsequent case that gets barred by the prior litigate final order. And so in the 1981 case, there was a final order. Correct? Yes, except, again, I believe Judge Robinson specifically preserved those claims. Well, it may be, I mean, taking it most generously to you, it may be that Judge Robinson encouraged you in a way that was not accurate under the law, if you read the footnote extremely broadly. But ultimately, you know, that's not your lawyer. And under Wilkes, it seems pretty clear that you're barred, at least on your Burger King claims, you're barred by the 1981 action. And going one step further, I think that in your brief, and I heard a little of it in your argument today, was the suggestion that the onus should have been on Appalee in the 1981 case if they disagreed with Judge Robinson's decision to object, in other words, to take some action regarding that. Well, I mean, one thing about that is that's predicated on the notion that we should actually view that as an order that would have been something that they had to object to, and particularly since it doesn't appear to be framed as such. But that is your position, right? That at some level, they should have done something about it. If this was a preservation of your claim, they should have taken some action in the 1981 action to respond to it. Yes, Judge. Okay. I'm going to focus you for a minute on your claims related to the retaliation, what I call the Church's claim as opposed to the Burger King claim. That one's untimely, isn't it? Well, the Church's claim that was filed in 2019 and issued a right to sue letter in 2021, we chose not to make or file a lawsuit on that because there was already the 2016 case that was involving when Ms. Watkins worked at Burger King. But the 2016 charge did not involve the retaliation at Church's, correct? That's right. And when you got the right to sue letter on that 2019 charge in 2021, you had 90 days to file a lawsuit, but you chose not to. Yes, because we chose not to file a lawsuit involving the Church's case. And at that time, it became untimely. To file against Church's? Yes. About the Church's issues, yes, that would have been untimely. And trying to make, well, understand what's going on here, let me, help me with this. At least what I understand to be your position is, yes, they could not file, we did not file against Church's, we chose not to based upon the 2019 charge. But that did not stop us from distinctly filing based upon the Burger King matters that were the subject of the 2016 charge when the right to sue letter came in, because they involved distinct conduct. Is that your position? I'm not sure I understand this right, but the 2019 charge against Church's involved actions that happened at a different employer, and it happened three years later. Had we filed a lawsuit based upon that and included the allegations from the 2015-2016 charge, those would have been found to be untimely in front of the court. But it's your contention that when the notice of the right to sue letter came in, that you had, that triggered your right to raise those claims related to that 2014-2015 period. No. No? It was my understanding that we were required to wait for the charge specifically associated with the 2016 charge. Yes, and that related to the underlying conduct that took place in 2014-2015, right? The Burger King stuff. And that right to sue letter was issued in 2022, and we filed the lawsuit within 90 days of receiving that right to sue letter. And it is the Burger King stuff that you seek to pursue, that you sought to pursue in district court, that is the subject of this case, right? Yes, Your Honor. Okay. And so the premise would be that part of this, I think, turns on the fact that you included allegations of 2014-2015 in the 2019 charge. In other words, you included some of the allegations that were in the 2016 charge in the 2019 charge, but it's my understanding that you're, I'm just trying to understand the theory here. The premise would be that that was just background, that you weren't actually trying to act on that. That's right, and we specifically say in that charge, you know, we add to that charge, we put the background factual information, and then we essentially say we are bringing allegations of discrimination, retaliation for that time period. And so I can't remember exactly the date we filed it, but the activity occurred in December of 2018. Of the retaliation. The charge. Yes, yes. But with respect to the Burger King events that were 2014, even though you included them in the 2019 charge, by then, they were untimely, because you had to file at the front end, you had a deadline of 180 days to file, and that had passed. So they could only be background, because they were untimely as the basis for a charge. And that's exactly right. Let me, let me, wait a minute. Let me be clear. It's my understanding that as it relates to the 2014, 2015 charges, they were the subject of the 2016 charge that you got the right to sue letter on. So why would they be untimely? In 2022, what I'm saying is that the 2019 charge that involved Church's Chicken, the subsequent employer, we included 2014, 2015, and attached the original charge because we were alleging retaliation against that. And so that, we were telling the story, here's why we believe she was retaliated against. And to be timely within the EEOC, it has to be activity that occurred. We can only go back 300 days. So it couldn't have been timely as it relates to 2019, but for purposes of the district court's order, what I understood you to be saying is that because you got the right to sue letter as it relates to the 2016 charge, they are timely. You got a right to sue letter on the 2016 charge and you filed in 90 days. Well, that would, that would have been timely. That's what I'm trying to understand. I guess the confusion is Judge Brattle actually, she dismissed, based upon the right to sue, saying that we should have filed on the 2021 right to sue letter, which actually was in relation to the 2019 charge. So we still had the 16 charge and, you know, those two, those two, you know, it was alleged phone call. So the EEOC was able to, you know, my assumption is dispose of that real quickly. Did somebody make a phone call and did that happen? But the 2016 charge, about the 2014, 2015, it remained to be on file. Okay. And then we, and then it went, because it was a cause finding, it also went into conciliation. And, you know, I think the conciliation, you know, also, it does matter because, you know, the procedure seems to change at least a little bit, whether there's no cause or there is cause. Because when there's, when there's cause, you get into conciliation. And I believe, you know, I believe, well, it gets into conciliation. So, so it's your premise that in the background was always this 2016 charge that related to the 2014, 2015 conduct. And then when the EEOC finally issued the notice of right to sue, that triggered your ability to act. Provided we're talking about the 2022 right to sue, yes, Your Honor. That's what, the lawsuit, that's what we're talking about. Right. Okay. Thank you, counsel. Okay. It looks like I'm done. Thank you, counsel. Thank you. Your Honor. Your Honor, may it please the Court. I'm Charles Lee. We represent, my firm represents Ginesh, which is the aptly in this case. As you can tell from having looked at the briefing in this case, there is an element of convolution in the sense of when things were filed, why they were filed, why things were not filed. I want to address at the outset the question of the distinction between the 2016 and 2019 charges that were filed with the EEOC. It is important to recall that the 2019 charge encompassed verbatim everything that was in the 2016 charge. Well, it did. It included that information as the appellant put it for it as background. So the 2019 charge at its bottom related to a retaliation involving Church's Chicken. When she was working at Church's Chicken. And in order for you to understand what they were retaliating about, they included the allegations through 2014-2015. Why wouldn't, that didn't mean that they were actionable allegations. It meant that they provided background for what they were at that moment in 2019 seeking relief from, from the EEOC. I don't understand why that, what's wrong with that. Well, I believe the EEOC treated the 2019 charge as a separate charge. It was assigned a different number as the court is aware. Well, it would have been a separate charge as it relates to the retaliation that took place when she was at Church's Chicken. But there's this 2016 charge out here, which includes 2014-2015 conduct when she's at Burger King. And why isn't that still viable up until the time that the EEOC acted to issue its notice of right to sue? Well, because from our perspective, because it's the same claim in 2019 with the Church's Chicken added to it. And simply that is preceded by the same claims that were made in 2016. It's the same, it's a different employment relationship, isn't it? If you're talking about Church's, yes, you are. However, whether that is a material issue, the district court obviously thought it was not. And I think it's important to recall that. You don't think it's material that your complaint is against a wholly different employer? The complaint, we would not perceive, Your Honor, to be against a wholly different employer. The claim was that in furtherance of retaliation from the Burger King perspective, there was a telephone call made to someone at Church's Chicken to say, if you accept the plaintiff's perspective. By the time the 2019 charge was filed, you could not, they could not file charges about what happened in 2014. Because those had already expired by time. So they had to just be background. Well, that, I guess, Your Honor, depends on the way that you view the plaintiff, in this case the appellant's, approach to this case. What happened... Well, it's a matter of counting days on a calendar. If they had not already filed the 2016 charge, which in fact preserved those claims related to the 2014 activity at Burger King, by 2019, they wouldn't have been able to bring a charge because the right would have expired. Well, I think, Your Honor, the critical issue here is that the 2019, however one characterizes the 2019 charge, whether as we view it as simply a repetition of the 2016 charge or as something else, that charge was filed in 2019. There was a right to sue issue that was issued in 2021, and the suit was not filed within 90 days after that was issued. And then the 2016 right to sue issue, right to sue letter was issued in 2022. So assuming that the lawsuit filed once they got the right to sue letter on the 2016 charge in 2022 was timely filed, isn't your better argument that it's barred by res judicata? We're getting there, yes. But I wanted to address this question of timeliness because we would not concede that it was in fact timely. Well, let me add. There is a line in the district court order that says, let me just quote it. It's only one sentence, quote, moreover, even if plaintiff did not want to file suit in regard to the events of December 2018, she could have sued to challenge the conduct which occurred from 2014, September of 2014 to August of 2015, and simply omitted the 2018 events from her lawsuit, unquote. How is that right? She couldn't have done that because the 2014-2015 conduct that was in the 2019 charge was dead on arrival when the charge was filed, right? Your Honor, I hesitate a little to try and get into Judge Rattle's head. Well, you're here talking about that order, so you need to get into it. And so I'm prepared to do that. What I think she thought, which is what we think also, as I indicated, that the 2019 charge was simply a reiteration, almost verbatim except for the church's element, of the 2016 charge. And so I think Judge Rattle's perspective and what she based her decision as to the issue of timeliness was that because this is the same charge, essentially, from 2016, that then when a right to sue letter was issued in respect to that, then the right to bring a claim expired at the expiration of 90 days after that. But they could not have sued on the 2014-2015 conduct because that conduct was already the subject of a separate charge from 2016, right? There's probably two questions there, Your Honor, which I respect. Well, then help me with the two questions, please. I think the two questions are, number one, is it a separate charge? But number two, to the extent that it is pursued or perceived as a separate charge, then no, it would not be timely. Okay. Now, going on to claim preclusion, why should you get the benefit of Wilkes? You never cited Wilkes. You never cited Wilkes in the district court. You never cited Wilkes to us. Why should you get the benefit of that? Well, we cited the equivalent, Your Honor. No, you didn't. What case is the equivalent of Wilkes? Well, the – and I may butcher the pronunciation, but the Soso-Liang Lo versus Pan Am, which is a Second Circuit case. A Second Circuit case? Yes. Then it would not have been controlling precedent, right? Wilkes is controlling precedent of our circuit that defines what happens with claim preclusion. That's not the same thing, is it? It is persuasive authority, I believe. My question was, is that the same thing? It is not, right? It's not binding on this circuit, no. Thank you. If that's the question. Yes, that is the question. And the – but the question of whether one has to cite a particular case if the law is – and the position is consistent with that case, our view of that would be that that's not the appropriate approach. The question is one of preservation. And the question is that Wilkes is controlling precedent of this circuit, which arguably is dispositive here. You did not cite it to anyone. You didn't cite it to us. You didn't cite it to the district court. And so the question would become, at what point do you lose the right to be able to rely on it? Note, that doesn't say you can't rely on your Second Circuit case. Can't say you can't rely on the arguments that are raised on that. I'm asking you specifically about Wilkes, and what basis would it be for us to, as a matter of discretion, just say, well, you just can't rely on that case? Well, I think the – if I were sitting on the court, my perspective would be that if the issue of claim preclusion has been raised, which it was clearly so, that if there is Tenth Circuit authority that is consistent with the idea that the claim is barred by elements and principles of claim preclusion, that that would be the controlling element. How can we say that Ms. Watkins had a full and fair opportunity to litigate the Title VII claim in light of the footnote in Judge Robinson's order? When we think about full and fair opportunity to litigate, our law directs us to think about the fairness of the process, the party's incentive to litigate. Could you speak to that? Why is that element satisfied here? Certainly, Your Honor. There are, as the court is well aware, obviously two elements always present in litigation. And one is, does the substantive claim have merit? But there are also procedural requirements that have to be met. And that if those procedural requirements are not met, then whether there is substance to the claim or not, then the court is obliged to enforce those procedural requirements. In this case, that procedural requirement, of course, was a timely filing, number one. And number two, however we may differ in terms of whether it is timely or not timely, but number two, we view that res judicata is dispositive. That's not answering my question. I'm asking specifically about the element. So the element, let's assume the other elements of preclusion fall in your favor. And we're focused on the fourth element, the exception to claim preclusion on whether this was fully and fairly litigated. It has to have been. Ms. Watkins, we need to be able to say that she had a full and fair opportunity to litigate her Title VII claims. How can we say that in light of the footnote that specifically carves them out? Well, the claim or the case that is the basis, the original basis for claim preclusion, is the 1981 case. That was not dismissed at the motion to dismiss stage. That was a motion for summary judgment. And so facts were presented to the court. And what the court concluded, as the court here would be aware, is that there was no evidence, at least no cognizable evidence, of race discrimination. And therefore, the case was dismissed after all of those facts were presented in the form of briefing on the motion for summary judgment. So in that case, it's true. There wasn't a plenary hearing. But there were facts presented under oath in that case. And so I think Ms. Watkins had the opportunity to make the case on the facts that underlined that particular case. And then those facts, those same facts, are what are recited in the lawsuit. So how should we be thinking about that footnote? It just doesn't matter? That footnote, as framed by Mr. McKee, Your Honor, strikes me as essentially an ensemble argument. That there was this footnote reference to the ability to bring a Title VII case once the right to sue letter was issued. But that was based on, number one, a representation by Mr. McKee. It wasn't that Judge Robinson did not delve into what the underlying facts were in relation to the Title VII claim. That was asserted. And so the question becomes, I think, two probably. One, is there justifiable reliance by Ms. Watkins on what is dicta in an opinion? And number two, does Judge Robinson have the authority to say, well, whatever Title VII says in terms of when you have to bring a suit, you can bring it at a time that is inconsistent with that. We think not. So on those two, just to put a fine point on it, as it relates to those two points, in your view, no justifiable reliance and Judge Robinson didn't have the authority. I would add to that, Your Honor, only that I think that she was operating under a paucity of facts about this. And I'm not trying to be critical of her. I just wanted to understand. So your position is both of those statements are right? Yes. That would be correct. Unless you have other questions of me, then thank you for your time. Thank you, counsel. Thank you to both of you. The case was well argued and the case is submitted. Thank you.